## FARMERS MUTUAL INSURANCE ASSO. *v.* PRICE.

1. When a policy of fire-insurance stipulated that it should cease to be of force in case of "a change of title or ownership of the" property insured, a conveyance by the insured to another rendered the policy ipso facto void.
2. Where it was in such a policy also stipulated that the by-laws of the association by which the same was issued should be a part of the contract, and such by-laws specifically prescribed the manner in which all policies should be transferred, an attempted transfer of the policy in another and entirely different manner was ineffectual.
3. Under the facts of the present case, the insurance association was not estopped from setting up that the policy was void, and that the attempted transfer thereof was unavailing.

Submitted November 7,—Decided November 27, 1900.

Action on insurance policy. Before Judge Reagan. Butts superior court. July 13, 1900.

*James F. Carmichael* and *M. P. Hall*, for plaintiff in error.
*M. W. Beck, Y. A. Wright*, and *B. P. Bailey*, contra.

LEWIS, J.　This was a suit in Butts superior court, brought by
A. H. Price, as transferee, against the Farmers Mutual Insurance
Association of Georgia, upon a policy of insurance issued on Oc-
tober 8, 1895, to one W. H. Jenkins Jr., and which was trans-
ferred by him to the plaintiff, Price, on November 2, 1897.　Among
the stipulations in this policy was one to the effect that "if at any
time there shall be a change of title or ownership of the within-de-
scribed property, the obligations of the insured and the association
shall at once cease."　There was a further stipulation in the policy
that both the association and the insured should be governed by the
by-laws of the association.　It was shown by the testimony that there
was a by-law of the association that " all property insured by this
corporation shall be liable as herein provided, until all outstanding
losses shall have been paid, and until the owner thereof shall have
withdrawn his insurance in the manner prescribed by the by-laws
of said corporation : provided, however, that any transfer of such
property operate as a release of the same as to all subsequent liabil-
ities, unless the purchaser or purchasers thereof shall make applica-
tion to the board of directors for a continuance of said insurance
within ten days from the date of such transfer, in which event pur-
chaser or purchasers shall be substituted to all the rights of the
vendor, and the said property shall be held liable as herein provided,
and the provisions of this section shall apply as well to persons,
representatives, and guardians as to the purchasers of such prop-
erty."　It appears from a recital in the bill of exceptions that this
case, by consent of parties, was heard both on the law and facts
by the presiding judge without the intervention of a jury; that the
defendant demurred to the original petition, which demurrer was
sustained, and an amendment was made to the petition, to which
amendment defendant demurred, and also amended its demurrer to
the amended petition.　The court, after hearing argument, over-
ruled the demurrer and amended demurrer to the amendment of
plaintiff's petition, upon which error is assigned in the bill of excep-
tions.　The case proceeded to trial before the judge, and it appeared
from the evidence introduced before him that W. H. Jenkins Jr., the
insured, made a warranty deed on November 18, 1896, conveying

an absolute warranty title to all the property covered by the policy of insurance to A. H. Price in consideration of the sum of $500. It further appears from the evidence that, after this conveyance, W. H. Jenkins, the insured, paid all the assessments on the policy except one in December, 1897, which was paid by the transferee; but it does not appear that the company by any authorized official ever ratified this payment. It also appears that the policy was transferred by Jenkins to Price for value received, on November 2, 1897. The evidence of plaintiff below on the trial was to the effect that he was the transferee of the insurance policy; that on November 2, 1897, he went to the office of one J. W. McCord and stated to him that he was the owner of the property covered by the policy, and wanted a new policy; that McCord told him there was no need of issuing a new policy — that a transfer of the one held by Jenkins would protect him; that McCord wrote the transfer; that he paid only one assessment, Jenkins having paid all the others since his deed to the property, he, plaintiff, paying the last assessment before the fire and after the transfer. On the other hand McCord testified that he knew nothing of the transfer of the title to the property covered by the insurance policy from Jenkins to Price until November 2, 1897, nearly twelve months after the transfer of the property; that Jenkins and Price called at his office on November 2, 1897, and Price asked that the policy be transferred to him, and Price asked witness to write the transfer on the policy, which he did; that he was not asked for a new policy, and did not advise that a transfer from Jenkins to Price would be binding on the association.

After the evidence closed, the court rendered a judgment for the plaintiff for the principal amount due on the policy, with interest from the date of the loss of the property, and costs of suit. Upon this judgment of the court error is assigned in the bill of exceptions, which sets forth specifically the grounds of complaint. Other errors are also assigned in the bill of exceptions; one being on the judgment of the court overruling the motion to nonsuit the case; and another on the overruling of the demurrer of defendant to plaintiff's amended declaration. It is not, however, necessary in this case to pass separately and distinctly upon each ground, for, under the facts developed by this record, the court below clearly erred in rendering

the judgment for plaintiff, the law and evidence demanding a verdict or judgment for the defendant.

1. The policy in the present case expressly stipulated that it should cease to be in force in case of a change of title or ownership of the property insured.   From this stipulation in the policy it necessarily follows that when the insured conveyed by deed this property to Price, plaintiff below, without the consent or knowledge of the association, the conveyance rendered the policy ipso facto void. There is nothing in the record to indicate that the association had any notice whatever of this conveyance until one McCord, the agent or president of the association, received notice thereof nearly twelve months thereafter.   When he wrote out the transfer then for the parties, the policy was absolutely void; and it matters not what official position he occupied in the association, whether as president or not, he had no power, of his own motion, to restore it to life.   There is a conflict in the testimony as to whether he ever intended to do anything of the sort; but even if there was such an intention on his part, it was not binding upon the association, for it was the exercise of a power entirely ultra vires.

2, 3. The policy further stipulates that the by-laws of the association, under which the same was issued, should be a part of the contract; and it appears from the record that such by-laws specifically prescribed the manner in which all policies should be transferred.   We have, in the statement of facts which precedes this opinion, quoted the provision of the by-laws which prescribes the method by which purchasers of property shall be substituted to the rights of the vendor under the policy.   No effort was made to comply therewith in this case.   Hence it follows from these by-laws, which constitute a part of the contract, and by the express stipulations in the policy itself, that a transferee thereof, who has purchased the same from the insured, has no rights whatever thereunder, unless he makes application to the board of directors for a continuance of the insurance within ten days from the date of such transfer.   In other words, the board of directors is the governing body of the association in such matters; and it does not appear that they were ever approached at all, either by the vendor of this policy or the purchaser thereof, with reference to continuing the insurance in the name of the transferee.   The president, as above seen, had no such authority, and therefore, even if he had under-

taken to act with the view of binding his company, it would have been entirely out of his scope of authority, and directly in conflict with the stipulations in the contract entered into between the association and the insured; and the association would not be estopped by his acts, as they would be an absolute nullity. On this point see *Graham* v. *Ins. Co.*, 106 *Ga.* 840, and the opinion of the writer, and authorities cited, on pp. 843–4. We think the principle decided in that case, and as well the authorities cited in support thereof, sustain us in the view we take of the law governing the present one. Under the facts disclosed by the record, we think the court below erred in awarding a judgment in favor of the plaintiff; on the contrary, under the view we entertain of the law controlling the question involved, the facts demanded a judgment for the defendant.

*Judgment reversed. All the Justices concurring.*